UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ROBERT McFADDEN,

                              Plaintiff,

        v.                                                        9:25-CV-1252
                                                                  (AJB/ML)

ANTHONY J. ANNUCCI, et al.,

                              Defendants.

_____

APPEARANCES:

ROBERT McFADDEN
Plaintiff, pro se
14-B-3670
Mid-State Correctional Facility
P.O. Box 2500
Marcy, NY 13403


ANTHONY J. BRINDISI
United States District Judge

## DECISION and ORDER

## I.      INTRODUCTION

Plaintiff Robert McFadden commenced this action by filing a pro se civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis ("IFP") and a motion for injunctive relief.  Dkt. No. 1, Dkt. No. 1-1, Dkt. No. 1-2, Dkt. No. 1-3, Dkt. No. 1-4, Dkt. No. 1-5, Dkt. No. 1-6, Dkt. No. 1-7, Dkt. No. 1-8 (collectively, "Compl.");[1] Dkt. No. 3 ("IFP Application"); Dkt. No. 2 ("First Motion for Injunctive

_____

[1] The complaint is 360 handwritten pages. Based on the size of the filing, the complaint is comprised of nine docket entries.

1

Relief").  By Decision and Order entered on November 24, 2025, the Court granted plaintiff's IFP Application, reviewed the complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), dismissed certain claims, found that several other claims survived sua sponte review, and directed a response to the First Motion for Injunctive Relief.  Dkt. No. 24 ("November 2025 Order").  The November 2025 Order expressly advised plaintiff that further submissions would not be considered unless and until plaintiff provides the necessary copies of his complaint for service.  *See* November Order at 109-111.

On December 10, 2025, the Court received a motion from plaintiff seeking reconsideration of the November 2025 Order insofar as the Court did not address, or address to his satisfaction, the following: (1) plaintiff's claims arising under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq. ("Rehabilitation Act") and Title II of the Americans With Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA") "with respect to program matters affecting plaintiff's parole eligibility and . . . good time credits"; (2) plaintiff's claims raised under 42 U.S.C. §§ 1985 and 1986; (3) plaintiff's state law claim for "defamation of character"; (4) plaintiff's claims against defendants Graveline, Pope, Fabbio, Orcutt, Bower #1, Bower #2, Walker #2, Dowsland, Springer, Jacob, ORC Blackwell, ORC Brown, Schultz, Theo, and Warden; (5) plaintiff's request "for an order to 'seal' the filings from access by Westlaw due to the prisoners searching the plaintiff and seeking to harm him"; and (6) plaintiff's request "for the defendants to place the plaintiff in protective custody for security threats and safety risks."  Dkt. No. 29 ("Motion for Reconsideration").  On December 18, 2025, the Court received a motion from plaintiff for appointment of counsel.  Dkt. No. 31 ("Initial Motion for Counsel").

2

On December 26, 2025, the Court issued a Text Order denying the Motion for Reconsideration and Initial Motion for Counsel without prejudice, and with leave to renew following plaintiff's compliance with the service directive in the November 2025 Order.  Dkt. No. 32 ("December 2025 Order").  The December 2025 Order also advised plaintiff, with respect to his Motion for Reconsideration, that "with one exception, each of the defendants referenced in plaintiff's . . . motion were discussed in the November Order, and the claims asserted against all of those defendants other than ORC Brown were dismissed without prejudice."  *Id*. (citing November 2025 Order at 16, 19, 30, 39, 51, 85, 111-116).  Finally, the Court noted that plaintiff's Motion for Reconsideration failed to identify "the specific allegations within his complaint (page and paragraph number) that might support a claim under the Rehabilitation Act based on the denial of access to programming as a result of his disability."  *Id*.

Presently before the Court are the following: (1) plaintiff's renewed motion for appointment of counsel, Dkt. No. 35 ("Renewed Motion for Counsel"); and (2) plaintiff's supplemental filing, comprised mostly of excerpts of his complaint, made in support of his Motion for Reconsideration, Dkt. No. 36 ("Supplement to the Motion for Reconsideration").

## II.    MOTION FOR RECONSIDERATION

### A.    Relevant Legal Standard

A court may justifiably reconsider its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent manifest injustice.  *Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (McAvoy, C.J.) (citing *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir. 1983)).  A motion for reconsideration is

not to be used for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).  The standard for granting a motion for reconsideration is strict. *Shrader v. CSX Transportation, Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

### B.    Analysis

Here, plaintiff does not suggest that there has been an intervening change in the controlling law, nor has he presented new evidence which was not previously available. Therefore, the only basis for reconsideration is to remedy a clear error of law or to prevent manifest injustice.

As an initial matter, the Motion for Reconsideration was previously denied in the December 2025 Order, and the Court specifically advised plaintiff that his claims against defendants Graveline, Pope, Fabbio, Orcutt, Bower #1, Bower #2, Walker #2, Dowsland, Springer, Jacob, ORC Brown, Schultz, Theo, and Warden were addressed (and dismissed) in the November 2025 Order.  Moreover, plaintiff's Supplement to the Motion for Reconsideration does not include any new arguments (or evidence) in support of a request for reconsideration of the dismissed claims against these officials.  Thus, plaintiff has not presented a basis for reconsideration of the November 2025 Order with respect to these claims.

Insofar as the Motion for Reconsideration requests that the Court address claims raised in the complaint that were not expressly addressed in the November 2025 Order, plaintiff has not presented the Court with a proper renewed motion for reconsideration since the issuance of the December 2025 Order.  Nonetheless, out of an abundance of solicitude, the Court will address each of the remaining claims that are the subject of the Motion for

Reconsideration.

### 1.  ADA and Rehabilitation Act

Plaintiff contends that the Court erred in not construing the complaint to assert claims under the ADA and Rehabilitation Act "with respect to program matters affecting plaintiff's parole eligibility and . . . good time credits[.]"  *See* Motion for Reconsideration at 1-2, 11. The complaint alleges that plaintiff was denied access to these programs because he was placed on a "medical restriction[,]" and confined to his cell "24/7 for over 2 yrs due to extensive grievances [and] litigation.  *See* Compl, ¶¶ 1314, 1340.  The complaint also alleges that plaintiff was in restrictive confinement for disciplinary reasons.  *Id*., ¶¶ 861-881.

Title II of the ADA "proscribes discrimination against the disabled in access to public services."  *Harris v. Mills*, 572 F.3d 66, 73 (2d Cir. 2009) (citation omitted).  The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  *Id*. (citing 42 U.S.C. § 12132).  Similarly, Section 504 of the Rehabilitation Act requires that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ."  29 U.S.C. § 794(a).

The Second Circuit has noted that "the standards under both statutes are generally the same[.]"  *Wright v. New York State Dep't of Corr*., 831 F.3d 64, 72 (2d Cir. 2016).  Moreover, where, as here, the subtle distinctions between the statutes are not implicated, courts "'treat claims under the two statutes identically.'"  *Id*. (quoting *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)).

"In order to establish a prima facie violation under these acts, [an inmate] must show that 1) he is a qualified individual with a disability; 2) [the agency] is an entity subject to the acts; and 3) he was denied the opportunity to participate in or benefit from [the agency's] services, programs, or activities or . . . otherwise discriminated against . . . by reason of his disability." *Wright*, 831 F.3d at 72 (citing *Henrietta D.*, 331 F.3d at 272). "For purposes of determining whether an ADA plaintiff is a 'qualified individual with a disability,' . . . the ADA defines 'disability' to include, inter alia, 'a physical or mental impairment that substantially limits one or more major life activities[.]'" *Hamilton v. Westchester Cty.*, 3 F.4th 86, 92 (2d Cir. 2021) (quoting *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020) (quoting 42 U.S.C. § 12102(1)(A))).

"[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *Keitt v. New York City*, 882 F. Supp. 2d 412, 426 (S.D.N.Y. 2011) ("Individuals in their personal capacities are not proper defendants on claims brought under the ADA or the Rehabilitation Act." (citing *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009)).

In this case, the complaint fails to identify any prison service, program, or activity that plaintiff was unable to participate in *because of* his medical condition, or a failure to accommodate it, let alone that any such deprivation was based on an official's discriminatory animus or ill will. Indeed, the complaint does not include any allegations which plausibly suggest that other prisoners held in restrictive confinement for disciplinary reasons were allowed to participate in these same programs, or that reasonable accommodations could have been made to provide plaintiff with out-of-cell programming without exposing him to an additional risk of harm. *See, e.g., Henrietta D.*, 331 F.3d at 276 (acknowledging that the

6

Rehabilitation Act is "addressed to 'rules ... that hurt [people with disabilities] by reason of their handicap, rather than that hurt them solely by virtue of what they have in common with other people'" (quoting *Good Shepherd Manor Found., Inc. v. City of Momence*, 323 F.3d 557, 561 (7th Cir. 2003))); *Monsour v. New York State Off. for People With Developmental Disabilities*, No. 13-CV-0336 (BKS/CFH), 2017 WL 5514363, at *1 (N.D.N.Y. Nov. 9, 2017) ("[I]f a disabled person is excluded from program participation or denied benefits for reasons other than disability, the exclusion or denial does not violate section 504 [of the Rehabilitation Act]."); *Hall v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 12-CV-0377, 2015 WL 901010, at *3-6 (N.D.N.Y. Mar. 3, 2015) (dismissing ADA claims alleging disparate treatment and failure to reasonably accommodate the plaintiff's mental illness, where the plaintiff's denial of access to programs and services was based largely on his conviction of disciplinary offenses, the complaint failed to allege that "non-mentally-ill inmates convicted of a disciplinary offense and serving a sentence in SHU" received access to those programs, and the complaint largely complained of the adequacy of his mental health treatment rather than discrimination); *Roberts v. City of New York*, No. 14-CV-5198, 2016 WL 4146135, at *9 (S.D.N.Y. Aug. 2, 2016) (dismissing ADA claims where the plaintiff failed to allege that he "was excluded from participation in any program or activity, or otherwise treated differently, because of" his diabetes, and his claims sounded in medical malpractice rather than disability discrimination); *Chambers v. Wright*, No. 05-CV-9915, 2007 WL 4462181, at *4 (S.D.N.Y. Dec. 19, 2007) (dismissing ADA claims where the "[p]laintiff d[id] not make any allegations concerning [the] [d]efendants' discriminatory animus or ill will"); *Renelique v. Goord*, No. 03-CV-0525, 2006 WL 2265399, at *11 (N.D.N.Y. Aug. 7, 2006) (dismissing official capacity claims under the ADA where the plaintiff did "not allege[ ] any facts that would support a

conclusion that [the] [d]efendants acted with discriminatory animus or ill will toward him").

Accordingly, the Court did not err in failing to construe the complaint to assert ADA and Rehabilitation Act claims.

## 2. Conspiracy Claims

Plaintiff contends that the Court erred in not construing the complaint to assert cognizable claims under 42 U.S.C. §§ 1985 and 1986, i.e., conspiracy claims. *See* Motion for Reconsideration at 2.

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors . . .; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999); *see also Rasheen v. Adner*, 356 F. Supp. 3d 222, 235 (N.D.N.Y. 2019). A conspiracy claim arising under Section 1985(3) requires additionally proving that the conspiracy was engaged in "for the purpose of depriving, either directly or indirectly, any person or class of persons the equal protection of the laws." *N.Y.S. Nat'l Organization for Women v. Terry*, 886 F.2d 1339, 1358 (2d Cir. 1989); *accord, Sheehy v. Brown*, 335 Fed. App'x 102, 104 (2d Cir. 2009); *Mian v. Donaldson, Lufkin & Jenrette Secs. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993) (noting that a Section 1985 conspiracy must "be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action'" (quoting *United Bhd. of Carpenters, Local 610 v. Scott*, 463 U.S. 825, 82-29 (1983)); *Manbeck v. Micka*, 640 F. Supp. 2d 351, 382 (S.D.N.Y. 2009) ("[A] Section 1985 conspiracy differs from a Section 1983 conspiracy in that the plaintiff must also provide evidence that Defendants acted in concert with a racial or discriminatory animus." (internal quotation marks and citations omitted)). The failure to prevent a conspiracy despite

8

knowledge of the intended wrong is also actionable under 42 U.S.C. § 1986. However, "[a] claim under section 1986 . . . lies only if there is a viable conspiracy claim under section 1985." *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994).

In this case, the complaint lacks specific details regarding which officials agreed to violate plaintiff's rights, when any such agreement was formed, or how plaintiff became aware of any such agreement. *See, e.g.*, *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."); *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (explaining that a conspiracy claim requires "some factual basis supporting a meeting of the minds"); *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (explaining that a plaintiff must "make an effort to provide some details of time and place and the alleged effects of the conspiracy . . . [including] facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end" (citations omitted)). In addition, the complaint is devoid of allegations which plausibly suggest that any alleged wrongdoing experienced by plaintiff was motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus. Rather, by plaintiff's own allegations, he was mistreated based on his history of complaints and disciplinary infractions, and officials generally disliking him. *See* Compl. at ¶¶ 861-881, 962-964. Thus, the complaint lacks sufficient facts to state a cognizable conspiracy claim under Section 1985.

Accordingly, the Court did not err in failing to construe the complaint to assert claims under 42 U.S.C. §§ 1985 and 1986.

### 3. State Law Defamation Claim

Plaintiff contends that the Court erred in not construing the complaint to assert a

cognizable state law claim for defamation.  *See* Motion for Reconsideration at 2.

In the November 2025 Order, the Court discussed, in the context of plaintiff's state law claims under the HALT Act, the jurisdictional limitation imposed by New York Correction Law § 24 on state law claims asserted against any officer or employee of the New York State Department of Corrections and Community Supervision ("DOCCS").  *See* November 2025 Order at 102-105.  As noted therein, "'[c]laims for damages arising out of a DOCCS employee's act performed within the scope of his employment may be maintained in the New York Court of Claims as a claim against the State of New York.'"  *Id*. at 102 (quoting *Heyliger v. Gebler*, 496 F. Supp. 2d 250, 252 (W.D.N.Y. 2007)).

The complaint alleges that plaintiff was "defamed [and] slandered" by "unnamed PMT staff" and defendant Fischer when defendant Fischer stated, in writing, that plaintiff "was a drug addict" in response to plaintiff's request that he be allowed access to out-of-cell programming at a time other than the morning.  Compl. ¶¶ 875-883.

The Motion for Reconsideration does not point to any allegations in the complaint which plausibly suggest that any official acted outside the scope of his or her employment in allegedly defaming plaintiff's character.  *See Henderson v. Popp*, No. 9:22-CV-0242 (AMN/MJK), 2025 WL 1033853, at *26 (N.D.N.Y. Mar. 4, 2025) ("As there are no allegations that Defendants were acting outside of the scope of their employment and in the discharge of their duties, the statutory bar imposed by Corrections Law § 24 is applicable[.]"), *report and recommendation adopted by* 2025 WL 942801 (N.D.N.Y. Mar. 28, 2025), *aff'd as modified*, 2025 WL 1427876 (N.D.N.Y. May 19, 2025); *Arriaga v. Annucci*, No. 23-CV-1941, 2024 WL 1743300, at *6-7 (S.D.N.Y. Apr. 23, 2024) ("Here, plaintiff does not allege any defendant acted outside the scope of their DOCCS employment . . . Accordingly, plaintiff's state law

claim[ ] for . . . slander per se, and fraud must be dismissed."); *Davis v. McCready*, 283 F. Supp. 3d 108, 123 (S.D.N.Y. 2017) ("Courts in the Second Circuit have long held that Section 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment.").

Accordingly, the Court did not err in failing to construe the complaint to assert a cognizable state law claim for "defamation of character."

### 4. Section 1983 Claims Against ORC Blackwell

Plaintiff contends that the Court erred in failing to address his claims against defendant ORC Blackwell.  See Motion for Reconsideration at 2. Plaintiff is correct that of the more than 130 individuals that he named as defendants, the Court overlooked ORC Blackwell.

The complaint alleges that for retaliatory reasons, defendant SORC Ciancio "aided [and] conspired with defendant Schiavi to hinder [and] obstruct the plaintiff's ability to review video/audio footage [and] recordings related to another lawsuit [and] discovery evidence[,]" and plaintiff "had to file countless grievances" against various officials, including defendant ORC Blackwell, based on their failure to address and remedy this issue.  *See* Compl., 1-5 at 30, ¶¶ 1061-1064.

As an initial matter, the complaint alleges that plaintiff was "eventually . . . allow[ed] to review" the material that defendants Ciancio and Schiavi initially prevented him from accessing.  *See* Compl., ¶ 1065.  Moreover, the complaint is devoid of allegations which plausibly suggest that plaintiff suffered any harm of a constitutional magnitude as a result of any alleged delay in accessing materials related to an ongoing lawsuit.  Thus, any alleged failure to address plaintiff's complaints sooner cannot support a cognizable Section 1983 claim.  *See, e.g., Bradshaw v. Marshal*, No. 9:21-CV-0826 (MAD/CFH), 2022 WL 3152363, at

*7 (N.D.N.Y. Aug. 8, 2022) ("[T]here must be an underlying constitutional violation in order for liability to attach to a supervisory official for failure to remedy ongoing harm." (citing *Raspardo v. Carlone*, 770 F.3d 97, 129 (2d Cir. 2014) ("Because we have held that there was no underlying constitutional violation, there is also no supervisory liability."))).

The Court would add only that the complaint also does not allege facts which plausibly suggest either that it was ORC Blackwell's responsibility to address grievances, or that this official communicated with plaintiff in any respect in response to his grievances and complaints.  Thus, the Court also has no basis to plausibly infer that this official was personally involved in the alleged wrongdoing carried out by defendants Ciancio and Schiavi. *See, e.g., Tripathy v. Schneider*, No. 21-CV-6392, 2021 WL 4504461, at *3 (W.D.N.Y. Oct. 1, 2021) (dismissing Section 1983 claim against Commissioner of New York State Department of Corrections and Community Supervision and Governor of New York where complaint alleged only that these officials "failed to respond" to plaintiff's complaints of wrongdoing, noting that "the failure to respond to letters protesting unconstitutional actions and/or requesting an investigation is, without more, insufficient to establish personal involvement"); *Brown v. Montone*, No. 17-CV-4618, 2018 WL 2976023, at *4 (S.D.N.Y. June 13, 2018) ("It is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." (quoting *Allah v. Annucci*, No. 16-CV-1841, 2017 WL 3972517, at *7 (S.D.N.Y. Sept. 7, 2017)).

Accordingly, the Court did not err in failing to construe the complaint to assert a cognizable Section 1983 claim against ORC Blackwell.

### 5. Plaintiff's Request to Seal Filings From Access By Westlaw and for Placement in Protective Custody

In plaintiff's prayer for relief, he asked that the Court issue an order (1) "'seal[ing]' the filings from access by Westlaw due to the prisoners searching the plaintiff and seeking to harm him" and (2) directing "the defendants to place the plaintiff in protective custody for security threats and safety risks." Dkt. No. 1-8 at 22. Plaintiff contends that the Court erred in not issuing a ruling on these requests. *See* Motion for Reconsideration at 3.

As the Federal Rules of Civil Procedure make clear, "[a] request for a court order must be made by motion." Fed. R. Civ. P. 7(b). Moreover, the Local Rules of Practice for this District require that motions to seal and motions for injunctive relief be supported by a memorandum of law and supporting affidavit to establish and provide factual and procedural background relevant to the motion, along with other specific information that was not provided with the complaint. *See* N.D.N.Y. L.R. 5.3; 7.1(b); and 65.1.

Accordingly, the Court did not err in failing to issue a ruling on these requests for relief.

### C.    Summary

After thoroughly reviewing plaintiff's Motion for Reconsideration and Supplement to the Motion for Reconsideration and affording these submissions due consideration in light of his status as a pro se litigant, the Court finds that plaintiff presents no basis for reconsideration of the November 2025 Order. Based upon a review of the relevant law and its application to the facts of this case, the Court concludes that its previous decision was legally correct and did not work a manifest injustice.

Accordingly, plaintiff's Motion for Reconsideration and Supplement to the Motion for Reconsideration are denied.

### III.   RENEWED MOTION FOR COUNSEL

It is well-settled that there is no right to appointment of counsel in civil matters. *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994).  Title 28 of United States Code Section 1915 specifically provides that a court may request an attorney to represent any person "unable to afford counsel."  28 U.S.C. § 1915(e)(1).  Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance.  *Cooper v. A. Sargenti, Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

In *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion.  In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance.  If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination.  *See id.* at 1341 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)); *Sawma v. Perales*, 895 F.2d 91, 95 (2d Cir. 1990).  Among these are

> [t]he indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues, and any special reason ... why appointment of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61.  None of these factors are controlling, however, and each case should be decided on its own facts.  *Id*.

Even if the Court were to assume that the case may be of substance, this action was only recently commenced, with service yet to be completed.  In addition, although several

14

claims remain in this action, none of them currently appear to present any overly complex issues.

While the Court is sympathetic to plaintiff's medical condition and confinement status, he has demonstrated a strong ability to investigate pertinent facts and present his case, having adequately raised several claims that survived sua sponte review, and already filed two separate motions. Moreover, in the event one or more of the named defendants is served and answers the complaint, a Mandatory Pretrial Discovery and Scheduling Order shall issue, which will direct the exchange of initial disclosures and likely help plaintiff frame the issues in the case and investigate the "crucial facts" without the need for counsel.

Although it is possible, should this case proceed to a trial, that there will be conflicting evidence implicating the need for cross-examination, as is the case in many actions brought under Section 1983 by pro se litigants, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995). Further, if this case proceeds to trial, it is highly probable that the Court will appoint trial counsel at the final pretrial conference. This Court is not aware of any special reason why appointment of counsel at this time would be more likely to lead to a just determination of this litigation.

In light of the foregoing, the Court finds that appointment of counsel is unwarranted. Plaintiff may file another motion for appointment of counsel following the exchange of initial disclosures, provided he can demonstrate that, in light of specific changed circumstances, consideration of the above factors warrants granting the application.

## IV. CONCLUSION

**WHEREFORE**, it is hereby

15

**ORDERED** that plaintiff's Motion for Reconsideration (Dkt. No. 29) and Supplement to the Motion for Reconsideration (Dkt. No. 36) are **DENIED** as set forth above; and it is further

**ORDERED** that plaintiff's Renewed Motion for Counsel (Dkt. No. 35) is **DENIED** without prejudice as set forth above; and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on plaintiff.

**IT IS SO ORDERED**.

Dated:  April 13, 2026

      Utica, NY

Anthony J. Brindisi
U.S. District Judge

16